IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

OHIO GAMBLING RECOVERY LLC,

Plaintiff,

v.

KALSHI INC.; KALSHIEX LLC; KALSHI KLEAR INC.; KALSHI KLEAR LLC; SUSQUEHANNA INTERNATIONAL GROUP, LLP; SUSQUEHANNA GOVERNMENT PRODUCTS, LLLP; ROBINHOOD MARKETS, INC; ROBINHOOD DERIVATIVES, LLC; and WEBULL CORPORATION,

Defendants.

Case No. 4:25-cv-01573-BYP

Judge Benita Y. Pearson
Magistrate Judge Amanda M. Knapp

**MEMORANDUM OF DEFENDANTS ROBINHOOD DERIVATIVES, LLC AND ROBINHOOD MARKETS, INC. IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ....1

STATEMENT OF ISSUES ....2

BACKGROUND ....3

A. Federal Regulation of Event Contracts Under the Commodity Exchange Act ....3

B. Kalshi's CFTC-Regulated Event Contracts And Robinhood's Platform ....4

C. The Statute of Anne and Plaintiff's Lawsuit ....4

SUMMARY OF ARGUMENT ....5

ARGUMENT ....7

I. This Court Has Federal-Question Jurisdiction Under The *Grable* Doctrine ....7

A. Plaintiff's Claim Necessarily Raises Two Federal Issues ....7

B. The Federal Issues Are Disputed And Substantial ....14

C. The Federal-State Balance Confirms This Case Belongs In Federal Court ....17

II. This Court Has Diversity Jurisdiction Under CAFA ....17

CONCLUSION ....20

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*,
458 U.S. 592 (1982)....................20

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*,
977 F.2d 1147 (7th Cir. 1992)....................17

*Bodine v. Limberopoulos*,
31 Ohio Law Abs. 200 (Ct. C.P. 1940)....................10, 11, 19

*Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*,
585 F.3d 33 (1st Cir. 2009)....................19

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006)....................15

*Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*,
780 F.2d 549 (6th Cir. 1986)....................20

*Freeman v. Blue Ridge Paper Prods., Inc.*,
551 F.3d 405 (6th Cir. 2008)....................18

*Georgia Gambling Recovery LLC v. Kalshi Inc.*,
No. SC2025CV001749 (Ga. St. Ct.)....................5

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005)....................6, 7, 8, 14, 15, 17

*Graiser v. Visionworks of Am., Inc.*,
819 F.3d 277 (6th Cir. 2016)....................18

*Gunn v. Minton*,
568 U.S. 251 (2013)....................1, 6, 7, 8, 9, 14, 15

*Hoss v. Layton*,
3 Ohio St. 352 (1854)....................10

*Illinois Gambling Recovery LLC v. Kalshi Inc.*,
No. 2025L007524 (Ill. Cir. Ct.)....................5

*Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*,
818 F.3d 193 (5th Cir. 2016)....................11

*Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*,
659 F.2d 1259 (4th Cir. 1981)....................19

*Kahn v. Walton*,
46 Ohio St. 195 (1889)....................11

*KalshiEX LLC v. CFTC*,
119 F.4th 58 (D.C. Cir. 2024)....................16

**Page(s)**

*KalshiEX LLC v. Flaherty*,
2025 WL 1218313 (D.N.J. Apr. 28, 2025) ....................16

*KalshiEX LLC v. Hendrick*,
2025 WL 1073495 (D. Nev. Apr. 9, 2025) ....................16

*Kentucky Gambling Recovery LLC v. Kalshi Inc.*,
No. 25-CI-00512 (Ky. Cir. Ct.) ....................5

*LG Display Co. v. Madigan*,
665 F.3d 768 (7th Cir. 2011) ....................20

*Massachusetts Gambling Recovery LLC v. Kalshi Inc.*,
No. 2584CV01630 (Mass. Super. Ct.) ....................5

*Michigan v. Bay Mills Indian Cmty.*,
695 F.3d 406 (6th Cir. 2012) ....................17

*Michigan v. Enbridge Energy, LP*,
571 F. Supp. 3d 851 (W.D. Mich. 2021) ....................8, 16

*Mikulski v. Centerior Energy Corp.*,
501 F.3d 555 (6th Cir. 2007) (en banc) ....................7, 9, 14, 15, 16

*Miller v. Bruenger*,
949 F.3d 986 (6th Cir. 2020) ....................15, 16

*NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*,
770 F.3d 1010 (2d Cir. 2014) ....................14, 17

*Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't of Env't Mgmt.*,
585 F.3d 42 (1st Cir. 2009) ....................12, 19

*Robertson v. Lynch*,
107 N.E.2d 883 (Ohio App. 1951) ....................12, 13, 14

*Robinhood Derivatives LLC v. Campbell*,
1:25-cv-12578 (D. Mass. 2025) ....................16

*Salamon v. Taft Broadcasting Co.*,
475 N.E.2d 1292 (Ohio App. 1984) ....................5, 6, 8, 9, 10, 19

*South Carolina Gambling Recovery LLC v. Kalshi Inc.*,
No. 2025CP3700563 (S.C. Cir. Ct.) ....................5

*Standard Fire Ins. Co. v. Knowles*,
568 U.S. 588 (2013) ....................18

*State v. Nucklos*,
904 N.E.2d 512 (Ohio 2009) ....................11

**Page(s)**

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025)....20

*United States v. City of Loveland*,
621 F.3d 465 (6th Cir. 2010) ....9, 12, 16, 17

*Worthington, Bellows & Co. v. Whitman*,
15 Ohio App. 161 (1921)....12, 14

*W. Virginia ex rel. McGraw v. Comcast Corp.*,
705 F. Supp. 2d 441 (E.D. Pa. 2010)....19

**Statutes**

Dodd-Frank Act of 2010, Pub. L. 111-203, 124 Stat. 1376 (2010)....3

7 U.S.C. § 1a(6) ....12

7 U.S.C. § 1a(9) ....3

7 U.S.C. § 1a(47)(A)(ii)....3, 8

7 U.S.C. § 2(a)(1)(A) ....3, 8

7 U.S.C. § 6c(g) ....4

7 U.S.C. § 6f ....4, 9

7 U.S.C. § 7(a) ....4

7 U.S.C. § 7(d) ....4

7 U.S.C. § 7a-2(c) ....4

7 U.S.C. § 7a-2(c)(1)....9

7 U.S.C. § 7a-2(c)(5)(C)(i) ....4

7 U.S.C. § 8....4

7 U.S.C. § 9(1) ....4

7 U.S.C. § 25(a) ....17

7 U.S.C. § 25(b) ....17

7 U.S.C. § 25(c) ....17

18 U.S.C. § 1084(a) ....5, 9

28 U.S.C. § 1332(d) ....2, 7, 17

**Page(s)**

28 U.S.C. § 1332(d)(1)(B) ....................18, 19

28 U.S.C. § 1332(d)(2) ....................18

28 U.S.C. § 1332(d)(5)(B) ....................18

O.R.C. § 2915.02(C) ....................5, 6, 8, 11

O.R.C. § 3763.01(B) ....................5, 8

O.R.C. § 3763.02 ....................1, 5, 6, 10, 12, 13, 14

O.R.C. § 3763.03 ....................11

O.R.C. § 3763.04 ....................5, 19

9 Anne c. 14 (1710) ....................5

**Regulations**

17 C.F.R. § 38.151(b) ....................4

**Other Authorities**

CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020) ....................4

KalshiEX LLC Rulebook Rule 3.8(a) ....................13

NFA, *Robinhood Derivatives LLC, Profile 042478* ....................4

S. Rep. 109-14 (2005) ....................18

## INTRODUCTION

Plaintiff Ohio Gambling Recovery LLC—a recently formed, out-of-state shell company—brought this suit on "behalf" of thousands of Ohio residents seeking to interfere with the trading of federally regulated derivatives on a federally regulated exchange. While Plaintiff coyly portrays the suit as a garden-variety state tort action, it is nothing of the sort. Instead, Plaintiff's claim requires determining the status under *federal* law of "event contracts"—a type of derivative contract traded under the auspices of the federal Commodity Exchange Act (CEA) and subject to the exclusive jurisdiction of the Commodity Futures Trading Commission (CFTC). As Plaintiff's own allegations make clear, these event contracts are the subject of millions of trades nationwide with an overall market size in the billions. This is a federal-law dispute of unquestionable national importance, arising in a suit attempting to aggregate the claims of thousands of Ohioans. For two reasons, this case belongs in federal court.

First, federal courts have jurisdiction when embedded federal issues are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). All four factors are met here. Deciding federal-law issues is inescapable in resolving Plaintiff's claim. Plaintiff seeks to hold Robinhood Markets, Inc., and Robinhood Derivatives, LLC (together, "Robinhood") liable for violating Ohio's Statute of Anne because Robinhood allows its users to buy and sell event contracts on a CFTC-regulated exchange operated by codefendant KalshiEX LLC ("Kalshi"). To do so, Plaintiff must establish both that trading these contracts on Kalshi's exchange is illegal and that Kalshi is *not* a "regularly established … board of trade." Ohio Revised Code (O.R.C.) § 3763.02. But under the CEA, the event contracts at issue here *are* legal, and Kalshi *is* a board of trade. Plaintiff tries to downplay these unavoidable federal issues as affirmative defenses, but longstanding Ohio precedent applying the Statute of Anne

establishes that these fundamental, threshold questions are *elements* of Plaintiff's claim. Plaintiff cannot prove its claims without winning both federal issues. Plaintiff's own complaint confirms the centrality of federal law in this case by invoking the federal Wire Act and alleging repeatedly (and wrongly) that Defendants' activities violate federal law. ECF 1-1 (Compl.) ¶¶ 2, 55-57.

Both federal issues are also disputed, substantial, and capable of resolution without disrupting the federal-state balance. Each issue implicates a decision by the CFTC within its exclusive jurisdiction to permit the trading of event contracts. And each issue is outcome-determinative in this case and critically important nationwide. Plaintiff's own account of the number of trades (millions), the size of the market (billions), and the number of States allegedly investigating these issues confirms as much. These important federal issues should be resolved in federal court.

Second, the Court also has jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d). CAFA confers federal jurisdiction to decide class actions—broadly defined to cover similar representative suits under state law—if the class has more than 100 members, the parties are minimally diverse, and the amount-in-controversy exceeds $5,000,000. *Id.* This case checks every box. Plaintiff seeks to recover, "on the victims' behalf," "tens of millions of dollars" lost by "thousands of individuals within Ohio." Compl. ¶¶ 7, 30, 67. That is a class action in all but name. Plaintiff's effort to disguise that fact and aggregate others' claims *without* satisfying class-action requirements is only more reason why CAFA entitles Robinhood to a federal forum.

This Court should deny Plaintiff's motion to remand.

## STATEMENT OF ISSUES

1. Whether this Court has jurisdiction under 28 U.S.C. § 1331, because Plaintiff's claim necessarily raises disputed and substantial federal issues properly resolved in federal court.

2. Whether this Court has jurisdiction under CAFA, 28 U.S.C. § 1332(d), because Plaintiff seeks to recover tens of millions of dollars on "behalf" of thousands of Ohio residents

who allegedly incurred these losses.

## BACKGROUND

### A. Federal Regulation Of Event Contracts Under The Commodity Exchange Act

Federal law has long regulated trading of futures contracts and other derivatives. Derivatives are financial instruments whose value depends on an underlying asset or interest. The first federal legislation on derivatives, enacted in 1922 and later amended and renamed the CEA, focused on grain futures. In 1974, Congress expanded the CEA to cover all "services, rights, and interests" traded via futures contracts. 7 U.S.C. § 1a(9). It also created the CFTC, vesting the agency with "exclusive jurisdiction" over futures trading on regulated exchanges. *Id.* § 2(a)(1)(A).

Event contracts are a type of derivative—generally a swap—subject to the CEA. Typically, an event contract presents a binary question (*e.g.*, Will the Federal Reserve cut interest rates at its next meeting?), with prices set by the market and payouts determined by real-world outcomes. For example, the "yes" outcome for "Will the Fed cut rates?" might sell for $0.20, and the "no" outcome might sell for $0.80; the contract provides a payout of $1 to whichever party to the event contract holds the side matching the real-world outcome when the outcome occurs.

Event contracts have long been subject to the CFTC's "exclusive jurisdiction," 7 U.S.C. §§ 1a(47)(A)(ii), 2(a)(1)(A), and Congress cemented that conclusion in the Dodd-Frank Act of 2010, Pub. L. 111-203, 124 Stat. 1376 (2010). Dodd-Frank expressly provided that the CFTC's "exclusive jurisdiction" includes "swaps" traded on CFTC-designated exchanges. 7 U.S.C. § 2(a)(1)(A). And it defined "swaps" to include (*inter alia*) any contract that provides for payment "dependent on the occurrence, nonoccurrence, or the extent of an occurrence of an event … associated with a potential financial, economic, or commercial consequence." *Id.* § 1a(47)(A)(ii). Dodd-Frank also authorized the CFTC to forbid certain types of event contracts, including those involving terrorism or gaming. *Id.* § 7a-2(c)(5)(C)(i). With exclusive CFTC jurisdiction comes a

panoply of rules covering everything from how event contract orders are executed to rules barring any manipulation of event contract prices. *E.g.*, *id.* §§ 6c(g), 7(d), 9(1); 17 C.F.R. § 38.151(b).

**B. Kalshi's CFTC-Regulated Event Contracts And Robinhood's Platform**

Kalshi operates a derivatives exchange that allows buying and selling event contracts. Robinhood operates a financial-services platform that facilitates buying and selling many financial products, from stocks and derivatives to cryptocurrencies. Robinhood allows users to buy and sell event contracts on Kalshi's exchange.

Robinhood and Kalshi have fully complied with the CEA's regulatory framework for trading event contracts. Under the CEA, an entity may register with the CFTC as a designated exchange or as an intermediary that facilitates customer trades on a designated exchange. 7 U.S.C. §§ 6f, 7(a), 8. To qualify for either type of registration, applicants must meet stringent requirements, including safeguards against market manipulation and conflicts of interest. *E.g.*, *id.* §§ 7(d), 8. Kalshi became a CFTC-designated exchange (called a "designated contract market") in 2020 and began listing event contracts under 7 U.S.C. § 7a-2(c). CFTC, *Order of Designation: In the Matter of the Application of KalshiEX LLC for Designation as a Contract Market* (Nov. 3, 2020). Robinhood Derivatives, LLC has been approved as a CFTC-registered intermediary (called a "futures commission merchant") since 2010. *See* NFA, *Robinhood Derivatives LLC, Profile 042478*, https://tinyurl.com/3w2cbt3b.

**C. The Statute of Anne And Plaintiff's Lawsuit**

Plaintiff is a Delaware LLC created in March 2025, apparently for the sole purpose of litigation. The same counsel, on behalf of five similarly named entities (formed the same day), filed nearly identical suits against the same Defendants in five other States. *Georgia Gambling Recovery LLC v. Kalshi Inc.*, No. SC2025CV001749 (Ga. St. Ct.); *Illinois Gambling Recovery LLC v. Kalshi Inc.*, No. 2025L007524 (Ill. Cir. Ct.); *Kentucky Gambling Recovery LLC v. Kalshi Inc.*, No. 25-CI-

00512 (Ky. Cir. Ct.); *Massachusetts Gambling Recovery LLC v. Kalshi Inc.*, No. 2584CV01630 (Mass. Super. Ct.); *South Carolina Gambling Recovery LLC v. Kalshi Inc.*, No. 2025CP3700563 (S.C. Cir. Ct.).

In each of these cookie-cutter cases, the plaintiff LLC filed a single-count complaint in state court asserting a claim under that State's Statute of Anne. Those statutes, modeled on an English anti-gambling statute enacted during the reign of Queen Anne, *see* 9 Anne c. 14 (1710), allow the loser in a gambling transaction to recover his losses from the winner. *See, e.g.*, O.R.C. § 3763.02. If the loser does not sue within a specified period of time (in Ohio, six months), the statutes authorize a third party to sue the winner to recover the loser's losses. *See id.* § 3763.04.

Ohio's Statute of Anne, first enacted in 1831, applies only to "games" or "wager[s]" that are not "expressly permitted by law." O.R.C. §§ 2915.02(C), 3763.01(B). A plaintiff thus may recover only for alleged gambling losses resulting from "illegal activity." *Salamon v. Taft Broadcasting Co.*, 475 N.E.2d 1292, 1297 (Ohio App. 1984). Ohio's statute also expressly excludes transactions conducted on regulated exchanges through a broker that complies with the exchange's applicable rules. O.R.C. § 3763.02.

The complaint here alleges that the trading of Kalshi's event contracts is illegal wagering "prohibited under federal law," citing the federal Wire Act, 18 U.S.C. § 1084(a). Compl. ¶¶ 55-56. It avers that "thousands" of unidentified Ohio residents lost money trading such contracts. *Id.* ¶¶ 7, 67. And it asserts that Defendants are gambling "winners," such that Plaintiff may recover losses from Defendants on "behalf" of Ohioans who did not sue within six months. *Id.* ¶¶ 7, 67-68.

Defendants removed the case to this Court. ECF 1. Plaintiff moved to remand. ECF 25.

## SUMMARY OF ARGUMENT

This Court has jurisdiction for two independent reasons.

I. This Court has federal-question jurisdiction because Plaintiff's claim embeds "federal issue[s]" that are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable

of resolution in federal court without disrupting" the congressionally approved balance of "federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-13 (2005)).

A. Plaintiff's claim "necessarily raise[s]" two federal issues. First, Plaintiff must plead and prove that the alleged gambling is not "expressly permitted by law," O.R.C. § 2915.02(C)—*i.e.*, that it is "illegal activity." *Salamon*, 475 N.E.2d at 1297. That will require deciding whether event contract transactions on Kalshi's exchange are authorized by the CEA. Second, Plaintiff also must prove that the event contract trades were not conducted on a "regularly established … board of trade … in accordance with [that board's] rules and regulations." O.R.C. § 3763.02. That, too, requires litigating federal issues: whether Kalshi is a "board of trade" under the CEA and whether Robinhood Derivatives, LLC facilitates trades consistent with Kalshi's "rules and regulations" that explicitly incorporate federal law. Plaintiff offers no plausible basis for resolving these issues without relying on federal law. Indeed, Plaintiff concedes the centrality of federal law here by invoking another federal law (the Wire Act) that purportedly forbids trading these contracts. And Plaintiff's attempt to recast these issues as defenses fails under settled Ohio precedent.

B. Both federal issues are also disputed and substantial. If Plaintiff conceded either issue, the case would be over. And whether federal law permits trading event contracts matters immensely to the federal system. This case is no one-off, run-of-the-mill tort action. The core dispute centers on the effect and validity of the CFTC's exercise of its statutory discretion to permit trading of these contracts. That is an issue of nationwide legal and practical importance.

C. These federal issues "belon[g] in a federal court." *Grable*, 545 U.S. at 315. Congress granted the CFTC exclusive jurisdiction over the trading of these contracts—and barred state-law interference—to bring derivatives markets under a uniform, federal regulatory regime.

Resolution of these issues would reinforce rather than upset the federal-state balance Congress struck.

II. This Court independently has jurisdiction under CAFA, 28 U.S.C. § 1332(d). Plaintiff does not dispute that minimal diversity is satisfied, the aggregate amount in controversy exceeds $5 million, and the proposed class contains at least 100 members. And Plaintiff's efforts to resist the "class action" label fail. Plaintiff's own complaint acknowledges that Plaintiff is suing on "behalf" of thousands of Ohio residents. Compl. ¶ 47. CAFA thus confers jurisdiction here.

## ARGUMENT

### I. This Court Has Federal-Question Jurisdiction Under The *Grable* Doctrine

The Supreme Court has long held "that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). Under the *Grable* doctrine, a federal court has federal-question jurisdiction over state-law claims embedding a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting" the congressionally approved balance of "federal and state judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 312-13). This Court has federal-question jurisdiction over Plaintiff's Statute of Anne claim because the claim raises two distinct federal issues, each of which satisfies all of the *Grable* elements.

#### A. Plaintiff's Claim Necessarily Raises Two Federal Issues

A federal-law issue is "necessarily raised" under *Grable* when a claim framed under state law "depends on" "the validity, construction, or effect of federal law." *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 565 (6th Cir. 2007) (en banc). A court must look to the "elements" of the plaintiff's claim and ask whether any element requires the plaintiff to apply federal law to the "facts of [its] case" in order "[t]o prevail." *Gunn*, 568 U.S. at 259. Whether the complaint

"expressly reference[s] federal law" is not the inquiry; a court must determine whether federal issues are in fact "embedded." *Michigan v. Enbridge Energy, LP*, 571 F. Supp. 3d 851, 858 (W.D. Mich. 2021) (quoting *Grable*, 545 U.S. at 308).

Plaintiff's Statute of Anne claim against Robinhood necessarily raises two distinct federal-law issues: (1) whether the event contract transactions at issue are expressly permitted under federal law; and (2) whether Kalshi is a regularly established board of trade under federal law.

1. Plaintiff's claim requires addressing whether the event contract transactions here are "expressly permitted by" federal law. The chapter containing Ohio's Statute of Anne provides in its first section that the chapter "do[es] not apply … to any game of chance that is not subject to criminal penalties under [§] 2915.02." O.R.C. § 3763.01(B). Section 2915.02, in turn, "does not prohibit conduct in connection with gambling expressly permitted by law." *Id.* § 2915.02(C). Ohio courts thus have long held that a Statute of Anne claim requires a plaintiff to prove as an "elemen[t]" that the defendant engaged in an "illegal activity." *Salamon*, 475 N.E.2d at 1297-98.

To establish that element, Plaintiff necessarily must contend with federal law because Robinhood's facilitation of event contract transactions on Kalshi's derivatives exchange is—as Robinhood will show—"expressly permitted" by the CEA. The CEA grants the CFTC "exclusive jurisdiction" over "transactions involving swaps" on designated exchanges, and it defines swaps to include event contracts. 7 U.S.C. §§ 1a(47)(A)(ii), 2(a)(1)(A). Kalshi is designated by the CFTC as a derivatives exchange, which means that Congress has allowed it to list event contracts for trading unless the CFTC specifically prohibits them—which the CFTC has chosen not to do for any of the contracts at issue here. *Id.* § 7a-2(c)(1). And Robinhood Derivatives, LLC has registered with the CFTC as a futures commission merchant, which allows it to facilitate its customers' event contract transactions on Kalshi's exchange and subjects it to CFTC supervision. *Id.*

§ 6f. Federal law thus has "expressly permitted" each and every one of the transactions that Plaintiff challenges in this case.

Plaintiff alleges that the event contracts on Kalshi's exchange are not permitted by law because (it says) they violate the federal Wire Act. Compl. ¶¶ 55-58; 18 U.S.C. § 1084(a). That is wrong, as Robinhood will show, but Plaintiff's assertion only confirms that an element of its claim hinges on federal law. It will be "impossible to resolve" this essential element "without analyzing" federal law. *United States v. City of Loveland*, 621 F.3d 465, 472 (6th Cir. 2010).

Plaintiff principally rejoins (Mot. 5) that the legality of event contracts under federal law is not an element, but an "affirmative defense" that cannot supply federal-question jurisdiction. But Plaintiff never even addresses Section 2915's "expressly permitted by law" language, which Section 3763.01 expressly incorporates into Ohio's Statute of Anne, and which Robinhood's notice of removal put front and center. ECF 1 ¶¶ 4-7. Ohio's statute *itself* thus "necessarily require[s] application of [federal] law" to Plaintiff's case. *Gunn*, 568 U.S. at 259. If Plaintiff fails to prove that the event contracts here are illegal, its "claim will fail." *Mikulski*, 501 F.3d at 570.

Ohio case law confirms that illegality is an element of Plaintiff's case-in-chief. The Ohio Court of Appeals considered a Statute of Anne suit by a plaintiff "seeking recovery" as a third party for "undetermined sums of gambling losses incurred by unidentified persons." *Salamon*, 475 N.E.2d at 1295. The question was whether the plaintiff could "prove the requisite elements of the statute." *Id.* at 1298. The court held he could not, explaining that "[p]roof" by the plaintiff "is ... required that (1) a person, (2) losing money or thing of value to another, (3) *in an illegal activity* as provided in O.R.C. § 3763.02, (4) within six months, (5) without collusion or deceit … (6) fail[ed] to sue and prosecute for its recovery." *Id.* at 1297 (emphasis added). The plaintiff's claim failed because he could not show "two of *these elements*." *Id.* (emphasis added) (citing

*Bodine v. Limberopoulos*, 31 Ohio Law Abs. 200, 202 (Ct. C.P. 1940)). *Salamon* left no doubt that a Statute of Anne claim fails unless the plaintiff presents affirmative "proof" of illegality as an "elemen[t]." *Id.*

Plaintiff's observation that *Salamon* also alluded to these elements as "defense[s] available to a defendant" (Mot. 9) changes nothing. Plaintiff elides the distinction between a "defense"—a term that covers a defendant's ability to contest any element of a plaintiff's case-in-chief—and an *affirmative* defense, an argument that overcomes an otherwise-valid case-in-chief. *Salamon* used "defense" in the former sense: "Each *of these elements* offers a potential area of defense to the defendant." 475 N.E.2d at 1297 (emphasis added). And the court grouped illegality with other requirements that even Plaintiff concedes (Mot. 4) are elements of a Statute of Anne claim—including that "a person" "losing money or thing of value to another" "fails to sue and prosecute for its recovery" "within six months." *Salamon*, 475 N.E.2d at 1297. Nothing in *Salamon* or the statute suggests that only *some* of those "elements" are genuine elements, as Plaintiff contends.

Plaintiff's reading of *Salamon* is especially implausible because that case broke no new ground. Ohio's Statute of Anne has always been understood since its enactment before the Civil War to apply only to "illegal transaction[s]." *Hoss v. Layton*, 3 Ohio St. 352, 357 (1854). The central point of the statute was to provide a "right of action" where the common law otherwise would have denied *any* remedy because the gambling contract would have been void as "an offense against the criminal law." *Id.* The "first inquiry" in Statute of Anne cases therefore has always been whether the contract is "illegal." *Kahn v. Walton*, 46 Ohio St. 195, 203-04 (1889). That comports with how the Ohio Supreme Court has construed similar permitted-by-law provisions—as elements, not defenses. *See State v. Nucklos*, 904 N.E.2d 512, 513 (Ohio 2009) ("noncompliance with statutory or regulatory requirements is an element of trafficking in drugs").

Plaintiff tries to escape this long line of state-court precedent by citing Section 3763.03, which it says sets forth the only elements of a Statute of Anne claim. Mot. 5. But that provision has no bearing here. Section 3763.03 addresses pleading requirements "[i]n the prosecution of an action under sections [sic] 3763.02"—which governs only gambling *losers'* claims. Third-party suits like Plaintiff's are brought under Section 3763.04. Ohio courts have long recognized that the pleading standards of Section 3763.03 "d[o] not apply" to such actions. *Bodine*, 31 Ohio Law Abs. at 202.

If anything, Plaintiff's invocation of Section 3763.03 backfires. Section 3763.03 simply allows a gambling-loser plaintiff to survive the pleading stage "without setting forth the special matter." O.R.C. § 3763.03. Pleading the "special matter" is a common-law term that means "pleading … the *elements necessary for recovery*." *Bodine*, 31 Ohio Law Abs. at 204 (emphasis added). Thus, Section 3763.03 allows a gambling-loser plaintiff to survive a motion to dismiss in state court *without* reciting all of the elements (even for Section 3763.02 claims). But that only proves that Section 3763.03 itself does *not* list every element. Otherwise, its use of the "special matter" shorthand makes no sense. And whatever Ohio pleading rules require in state court, *federal* jurisdiction turns on the elements a plaintiff must ultimately *prove*, which here includes illegality. *See, e.g.*, *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 202 (5th Cir. 2016) (federal jurisdiction does not depend on state pleading rules).

Plaintiff also runs away from its federal Wire Act allegations (Mot. 7), but identifies no *other* way to prove that Defendants' conduct is not "expressly permitted by law." O.R.C. § 2915.02(C). It must show either that the CEA does not authorize trading the event contracts at issue or that some other federal law overrides the CEA's authorization. Plaintiff simply cannot avoid "the[se] embedded question[s]." *Rhode Island Fishermen's All., Inc. v. Rhode Island Dep't*

*of Env't Mgmt.*, 585 F.3d 42, 49 (1st Cir. 2009); *see City of Loveland*, 621 F.3d at 472.

2. To prevail, Plaintiff also must prove that the event contract transactions were *not* conducted on a "regularly established … board of trade … in accordance with" that board's "rules and regulations." O.R.C. § 3763.02. That, too, necessarily embeds federal-law issues—namely, Kalshi's compliance with the CEA and Robinhood's compliance with CFTC regulations.

Ohio's statute explicitly precludes liability for legitimate transactions on stock exchanges and boards of trade. Section 3763.02 provides that "neither this section nor section 3763.04 of the Revised Code shall apply to any business transacted upon *a regularly established stock exchange or board of trade* through a member thereof whose relation to the transaction is that of broker only, and who actually delivers or receives the securities or other commodity bought or sold *in accordance with the rules and regulations of said stock exchange or board of trade*." O.R.C. § 3763.02 (emphases added). For more than a century, Ohio courts have held that it is "incumbent upon" the party invoking the Statute of Anne to plead and prove that the challenged transactions fall *outside* of the category of legitimate market conduct. *Worthington, Bellows & Co. v. Whitman*, 15 Ohio App. 161, 167 (1921); *accord Robertson v. Lynch*, 107 N.E.2d 883, 883 (Ohio App. 1951).

The board-of-trade provision fits hand in glove with the event contract transactions here. The trades occur on Kalshi, a CFTC-designated—and thus "regularly established"—"board of trade." O.R.C. § 3763.02; 7 U.S.C. § 1a(6) ("'board of trade' means any organized exchange or other trading facility"). And Robinhood Derivatives, LLC, a CFTC-registered intermediary, is a "member" of Kalshi that facilitates those transactions in compliance with Kalshi's "rules and regulations," which incorporate federal regulations. O.R.C. § 3763.02; KalshiEX LLC Rulebook Rule 3.8(a) (Aug. 22, 2025), https://tinyurl.com/38t22kj3 ("FCMs shall comply with all Applicable Law."); *id.* at 6 ("Applicable Law" includes "the CEA and CFTC Regulations").

Plaintiff cannot make the showing Ohio law requires to establish its claim without relying on federal law. Plaintiff suggests it could prove that Kalshi is not a "regularly established" board of trade under state law. But that will be insufficient because Kalshi contends it is "regularly established" under *federal* law—and without proving otherwise, Plaintiff's claim cannot proceed. Nor does Plaintiff offer any colorable state-law theory for deeming a CFTC-designated "board of trade" to fall outside the protections of the provision. Mot. 6; *see Robertson*, 107 N.E.2d at 883 (affirming trial-court finding that transactions of grain on the "Chicago Board of Trade" fell within board-of-trade provision). Plaintiff also speculates that it "*could*" argue that the event contract transactions on Kalshi's exchange may not have occurred through a "broker only." *Id.* (emphasis added). But once again, Plaintiff provides no plausible explanation for why Ohio law would deem CFTC-registered intermediaries like Robinhood Derivatives, LLC to act as anything *other* than a broker when facilitating event contract transactions on Kalshi's exchange. *Id.* In fact, there are no allegations in the complaint that Robinhood Derivatives, LLC acts as anything but an intermediary for all transactions on its platform. Plaintiff's noncommittal conjecture confirms it has no intent or ability to rely on state law to try to prove the inapplicability of the board-of-trade provision. And Plaintiff's Wire Act allegations about illegality are a dead giveaway that Plaintiff intends to rely on *federal* law, notwithstanding what Plaintiff now says in support of remand.

Plaintiff also argues (again) that the board-of-trade provision is an affirmative defense. Plaintiff is wrong (again). Like illegality, Ohio courts treat the applicability of the board-of-trade provision as an element of the claim. In *Whitman*, the Ohio Court of Appeals addressed a defendant's Statute of Anne counterclaim alleging that the plaintiff had engaged in gambling. 15 Ohio App. at 167. To "sustain his claim," the court held, "[i]t was incumbent upon the defendant to establish by a preponderance of the evidence … that the plaintiff was *not* a regularly established

stock exchange or board of trade." *Id.* (emphasis added). The counterclaim failed because "[t]here was no substantial evidence of this negative character" on those issues. *Id.* The Court of Appeals reiterated the point in *Robertson*. 107 N.E.2d at 883 ("plaintiff carried" but could not satisfy "the burden of proof" to show inapplicability of board-of-trade provision (citing, *inter alia*, *Whitman*)).

Plaintiff also contends that, even if the board-of-trade provision is "an element, it would still be an element of a state statute—and so its scope would be 'a state law question.'" Mot. 6. That response misses *Grable*'s central point. Of course Ohio's Statute of Anne is a state-law claim for which state law sets forth its elements. But *Grable*'s core teaching is "that in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312. Here, Plaintiff cannot prove Defendants' "relation to the transaction[s]" (O.R.C. § 3763.02) without reference to the federal scheme, including the "construction, or effect of federal law." *Mikulski*, 501 F.3d at 565. "[F]ederal law" thus lies at the "heart" of Plaintiff's board-of-trade arguments. *NASDAQ OMX Grp., Inc. v. UBS Sec., LLC*, 770 F.3d 1010, 1021 (2d Cir. 2014).

**B. The Federal Issues Are Disputed And Substantial**

Both federal issues are disputed. Plaintiff must prove that federal law does not permit event contracts and that these event contracts are not traded on a federally designated board of trade consistent with federal rules. Defendants will argue just the opposite. These are exactly the sort of square federal-law disputes "that *Grable* envisioned." *Gunn*, 568 U.S. at 259.

These disputed issues are also substantial because they are "importan[t]" to "the federal system as a whole." *Gunn*, 568 U.S. at 260. In assessing substantiality, courts typically consider a number of factors, including whether a federal agency's "compliance with [a] federal statute is in dispute"; "whether the federal question is important (i.e., not trivial)"; "whether a decision on the federal question will resolve the case" and is "not merely incidental"; and whether such a

decision will affect "other cases" or is merely "anomalous or isolated." *Mikulski*, 501 F.3d at 570. But a given factor "may be more applicable" in one case than another, and "no single factor is dispositive"; all must "be considered collectively, along with any other factors that may be applicable." *Id.* The factors relevant here show that the federal issues are substantial by any measure.

*First*, this case is "centered on the action of a federal agency": the CFTC. *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700 (2006). The Court must decide whether the CFTC's decision to permit trading of the event contracts at issue on a CFTC-designated exchange (Kalshi) through a CFTC-registered intermediary (Robinhood Derivatives, LLC) "compli[es] with" the CEA. *Mikulski*, 501 F.3d at 570. Plaintiff pretends the case concerns typical "private tort or contract litigation," Mot. 8, but the *actual* dispute "directly draw[s] in question" that decision by the CFTC under the CEA. *Gunn*, 586 U.S. at 261. Just as the federal government would have a "direct interest in … a federal forum to vindicate its own administrative action," resolution of these federal issues "sensibly belongs in a federal court." *Grable*, 545 U.S. at 315.

*Second*, the federal issues are "so significant that a federal court should hear the case." *Miller v. Bruenger*, 949 F.3d 986, 992 (6th Cir. 2020). The complaint itself alleges that the federal issues are of national importance. It tallies millions of trades exceeding a billion dollars in the U.S. event contracts market. Compl. ¶ 59. The complaint recites opinions on the legality of event contracts from the nation's largest sports leagues and New Jersey casino interests. *Id.* ¶ 57. And it alleges that multiple States have initiated investigations into the contracts at issue here. *Id.* ¶ 54. Meanwhile, multiple lawsuits are ongoing in federal court about the authority of States to regulate event contracts traded on Kalshi's exchange. *See, e.g.*, *KalshiEX LLC v. Hendrick*, 2025 WL 1073495 (D. Nev. Apr. 9, 2025); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313 (D.N.J. Apr. 28, 2025); *Robinhood Derivatives LLC v. Campbell*, 1:25-cv-12578 (D. Mass. 2025). These cases

follow litigation involving the CFTC itself just last year. *KalshiEX LLC v. CFTC*, 119 F.4th 58 (D.C. Cir. 2024). The federal issues here are thus "under consideration at the highest levels" of federal and state government. *Enbridge Energy*, 571 F. Supp. 3d at 860.

*Third*, the federal issues are case-dispositive. If the event contract transactions here are "expressly permitted" by federal law, or if Robinhood facilitates the trading of event contracts on a CFTC-designated exchange consistent with federal rules, Plaintiff cannot prevail. As discussed, *supra* 13, Plaintiff's purported state-law bases for sidestepping these federal issues (*e.g.*, that a CFTC-registered intermediary like Robinhood Derivatives, LLC is somehow not a "broker" under Ohio law) are unelaborated and speculative. Under any reading of Plaintiff's claims, the federal issues presented are hardly "incidental to the outcome" of this case. *Mikulski*, 501 F.3d at 570.

*Fourth*, the federal issues here "will control numerous other cases." *Mikulski*, 501 F.3d at 570. Plaintiff seeks relief on behalf of "thousands" of individuals relating to event contracts that are still being offered. *City of Loveland*, 621 F.3d at 472; *see Miller*, 949 F.3d at 993 (case affecting "broad range" of individuals). Any of these "thousands" of event contract transactions involving a "loser" located in Ohio could give rise to a potential Statute of Anne claim (under Plaintiff's theory), and therefore resolution of Plaintiff's claim could control thousands of cases. And far from being an "isolated" issue, *Mikulski*, 501 F.3d at 570, the legality of event contracts on Kalshi's exchange is being actively addressed around the country—including in five other cookie-cutter lawsuits against the same Defendants Plaintiff's counsel has filed for similar Delaware LLCs in other States. The resolution of the federal issues here thus would "have a substantial impact on both the present litigation and on federal … gaming law more generally." *Michigan v. Bay Mills Indian Cmty.*, 695 F.3d 406, 413 (6th Cir. 2012).

### C. The Federal-State Balance Confirms This Case Belongs In Federal Court

The "congressionally approved balance of federal and state judicial responsibilities" also

favors federal jurisdiction. *Grable*, 545 U.S. at 314. Congress enacted the CEA to provide a "comprehensive regulatory structure to oversee" the derivatives markets and "to bring the markets under a uniform set of regulations." *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1155-56 (7th Cir. 1992). And in the CEA it gave the CFTC "exclusive jurisdiction" to regulate derivatives trading on designated exchanges. Exercising federal jurisdiction here thus preserves the "congressionally approved balance of federal and state judicial responsibilities." *City of Loveland*, 621 F.3d at 472. A "contrary holding … could allow litigants to use the state courts as a vehicle to" countermand the CFTC's decisions, fragmenting the national derivatives market. *Id.* Indeed, Plaintiff's counsel's six cut-and-paste lawsuits seek to do exactly that.

Plaintiff counters (Mot. 9) that Congress did not create a federal cause of action relating to gambling losses, but that is irrelevant. *Grable*, 545 U.S. at 309. The *Grable* doctrine's central purpose is to provide a federal forum for cases raising federal issues embedded in *state*-law claims. Regardless, the CEA *does* create private causes of action for parties injured by certain violations of the CEA—and gave federal courts "exclusive jurisdiction" over such actions. 7 U.S.C. § 25(a), (b), (c). Plaintiff cannot avail itself of those causes of action because, among other reasons, the event contracts here comport with federal law. But their existence "signal[s] that [this Court] will not upset the appropriate balance of federal and state judicial responsibilities by exercising federal jurisdiction." *NASDAQ OMX Group*, 770 F.3d at 1030. This is textbook *Grable* territory.

## II. This Court Has Diversity Jurisdiction Under CAFA

This Court independently has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d). "CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5,000,000.'" *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) (quoting 28 U.S.C. § 1332(d)(2), (d)(5)(B)). A "class action" is defined for CAFA purposes

as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar* State statute or rule of judicial procedure authorizing an action to be brought *by 1 or more representative persons* as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphases added). "Congress clearly 'intended [CAFA] to expand substantially federal court jurisdiction over class actions' and directed that CAFA's provisions 'should be read broadly.'" *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 287 (6th Cir. 2016) (quoting S. Rep. 109-14, at 43 (2005)). Given CAFA's "clea[r]" purpose "to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction," it is the suit's substance—not its form—that determines whether it is a class action. *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008).

CAFA's requirements are met here. Plaintiff does not dispute that the parties are minimally diverse, that the aggregate amount in controversy exceeds $5 million, or that the proposed class contains at least 100 members. Nor could it. According to the complaint, Plaintiff purports to bring suit "on the victims' behalf" to recover the "tens of millions of dollars" lost "[e]ach year" by "thousands of individuals within Ohio." Compl. ¶¶ 7, 30, 67. That liability purportedly arises from a common course of conduct—namely, Defendants' operation of "substantially identical" markets that facilitate transactions in event contracts with a "common form." *Id.* ¶¶ 31, 33, 38-39. And Plaintiff seeks a declaration that Defendants are liable for facilitating "illegal … gambling"—prospective relief that would benefit the class uniformly by sparing "the State's residents [from] los[ing] money" and stopping an alleged "pandemic of gambling addiction." *Id.* ¶¶ 5, 63-64, Prayer for Relief. Those are paradigmatic class-action allegations.

Plaintiff rejoins (Mot. 12) that its suit is not a "class action" merely because Plaintiff did not style its suit as such or seek to "join" Ohio residents. But CAFA requires courts "to look beyond the face of a complaint when determining whether federal jurisdiction exists over a matter

that appears to be a class action in all but name." *W. Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010). And "[a] complaint that contains class-type allegations historically has been assumed to assert a class action." *Coll. of Dental Surgeons of Puerto Rico v. Connecticut Gen. Life Ins. Co.*, 585 F.3d 33, 40 (1st Cir. 2009).

Indeed, Plaintiff's suit can proceed, if at all, *only* as a class action. Ohio's Statute of Anne creates a "separate cause of action" for each gambling loss of "a specific definite person." *Salamon*, 475 N.E.2d at 1297; O.R.C. § 3763.04. Ohio courts have long held that these claims ordinarily must proceed one-by-one. *Id.* (citing *Bodine*, 31 Ohio Law Abs. at 202). If Plaintiff's suit on "behalf" (and aggregating the claims) of thousands of Ohioans can proceed at all, it can only be as a class action or "similar" action by a "representative perso[n]." 28 U.S.C. § 1332(d)(1)(B).

Plaintiff fares no better in contending that this case does not "function" as a class action because Plaintiff "does not … assert claims that are typical to" the purported class members. Mot. 12-13. Organizations often attempt "to proceed as … class representative[s]," even when "the organization" is not "technically" a "member of a class." *Int'l Woodworkers of Am., AFL-CIO, CLC v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1268-69 (4th Cir. 1981) (internal quotation marks omitted). And for CAFA purposes, it is irrelevant whether Plaintiff ultimately "will succeed in satisfying the requirements of Rule 23." *Connecticut Gen.*, 585 F.3d at 42. Plaintiff's typicality argument "is appropriately addressed … under Rule 23's established protocol." *Id.* at 41. If anything, Plaintiff's effort to end-run the class-action prerequisites is *more* reason that Defendants deserve a federal forum under CAFA.

Plaintiff also misplaces reliance on cases declining to treat state *parens patriae* actions as class actions. *Parens patriae* suits "d[o] not involve the States stepping in to represent the interests of particular citizens" but rather the State's assertion of an injury to *its own* "'quasi-sovereign'

interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600-01 (1982). And whereas "the modern class action" derives from the common law "bill of peace," *Trump v. CASA, Inc.*, 606 U.S. 831, 848 (2025), the *parens patriae* action "has its roots in" a wholly distinct "common-law concept of the 'royal prerogative,'" *Snapp*, 458 U.S. at 600. That *sui generis* form of action—unique to sovereigns (to assert a sovereign or "quasi-sovereign interest"), and with its own idiosyncratic history—is fundamentally different from a class action. *LG Display Co. v. Madigan*, 665 F.3d 768, 771 (7th Cir. 2011) (reciting history). Plaintiff asserts no interest in Ohio's welfare. Its attempt to vindicate private interests, allegedly on "behalf" of thousands of individual Ohioans, looks nothing like a *parens patriae* suit. Compl. ¶ 7. Plaintiff's purported *en masse* claim thus must proceed as a class action—and satisfy Rule 23's strictures—or not at all.

Ultimately, Plaintiff runs away from its own pleading. It now insists that the suit is *not* on behalf of Ohio residents, but only "for losses" they sustained. Mot. 13. But its complaint says otherwise. Compl. ¶ 7. That admission that this suit *is* "on the victims' behalf" (*id.*) is "binding." *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986). And Plaintiff ignores that its complaint also seeks prospective relief declaring Defendants liable under Ohio's statute—relief that would inure uniformly to the class's benefit, by allegedly sparing "the State's residents" from "los[ing] money in the long run." Compl. ¶¶ 63, Prayer for Relief. In a word: Plaintiff brings suit on those residents' "behalf." *Id.* ¶ 7. That Plaintiff cannot *properly* aggregate others' claims outside of Rule 23 means the suit fails—not that it belongs in state court.

## CONCLUSION

The Court should deny Plaintiff's motion to remand.

September 26, 2025

Respectfully submitted.

*/s/ Jonathan C. Bond*
Eugene Scalia (*pro hac vice*)
Jonathan C. Bond (*pro hac vice*)
Nick Harper (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1700 M St, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 530-9603
EScalia@gibsondunn.com
JBond@gibsondunn.com
NHarper@gibsondunn.com

James A. King (Ohio Bar #0040270)
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street
Columbus, OH 43215
Phone: (614) 227-2000
Fax: (614) 227-2100
JKing@porterwright.com

*Attorneys for Defendants Robinhood Derivatives, LLC and Robinhood Markets, Inc.*