PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| OHIO GAMBLING RECOVERY, LLC, | ) | |
| | ) | CASE NO.  4:25-CV-1573 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| KALSHI INC., *et al.*, | ) | |
| | ) | **ORDER** |
| Defendants. | ) | [Resolving ECF Nos. 25, 29, 39, and 40] |

Pending before the Court are Plaintiff Ohio Gambling Recovery, LLC's two Motions to Remand (ECF No. 25; ECF No. 29).  The motions are fully briefed.  *See* Def. Robinhood Response Br., ECF No. 30; Kalshi Response Br., ECF No. 31; Reply Br., ECF No. 33. Defendants also move for leave to file *instanter* responses to Plaintiff's notice of supplemental authority.  ECF No. 39; ECF No. 40.  Being duly advised, having reviewed the parties' briefs and the applicable law, the Court grants Plaintiff's Motions to Remand (ECF No. 25; ECF No. 29) for the reasons stated herein.

## I.     BACKGROUND

Plaintiff brought this case under Ohio's Statute of Anne (Ohio Rev. Code ch. 3763) against ten defendants.  Plaintiff is a Delaware company, headquartered in Florida.  Defendant Kalshi, Inc., is a Delaware corporation headquartered in New York.  Defendants KalshiEX LLC, Kalshi Klear, Inc., Kalshi Klear, LLC, and Kalshi Trading LLC (collectively with Kalshi, Inc., "Defendant Kalshi" or "Kalshi") are each wholly owned subsidiaries of Kalshi Inc., and each are incorporated in Delaware and headquartered in New York.  Defendant Susquehanna

(4:25CV1573)

International Group LLP ("Defendant SIG" or "SIG") is a Delaware corporation, headquartered in Pennsylvania.  Defendant Susquehanna Government Products LLLP ("Defendant SGP" or "SGP") is incorporated in Delaware and headquartered in New York.  Defendant Robinhood Markets, Inc. is a Delaware corporation, headquartered in California.  Defendant Robinhood Derivatives LLC (collectively with Robinhood Markets, Inc., "Defendant Robinhood" or "Robinhood") is a wholly owned subsidiary of Robinhood Markets, Inc. and is incorporated in Delaware and headquartered in California.  Finally, Webull Corporation ("Defendant Webull" or "Webull") is a Cayman Island corporation, headquartered in Florida.  ECF No. 1-1 at PageID ##: 19–21, ¶¶ 8–18.

Robinhood filed a Notice of Removal on July 28, 2025, to which all then-served defendants consented, generating the above-captioned case.  Kalshi filed a separate Notice of Removal that generated a second federal action.  *Ohio Gambling Recovery, LLC v. Kalshi Inc., et al.*, No. 4:25-cv-1574, ECF No. 1 (N.D. Ohio July 28, 2025).  The Court consolidated the two cases.  *See* ECF No. 11.  In Kalshi's Notice of Removal (*see Ohio Gambling Recovery, LLC v. Kalshi Inc., et al.*, No. 4:25-cv-1574, ECF No. 1 (N.D. Ohio July 28, 2025)), Defendants assert that SGP, a limited liability limited partnership, and SIG, a limited liability partnership, are both citizens of Florida for purposes of diversity.  Plaintiff does not contest this citizenship.  ECF No. 25-1 at PageID #: 184.

The Complaint alleges that Defendants operate "prediction markets" within Ohio, in contravention of Ohio's Statute of Anne.  Specifically, Plaintiff alleges that Defendants allowed Ohio residents to purchase "event contracts," which are illegal, unregulated wagers on future events, essentially betting on the future outcomes of sports games, election results, and whether a particular song would break into the Billboard Top 100 chart.  ECF No. 1-1 at PageID ##: 23–24,

2

(4:25CV1573)

¶ 28.  The Complaint includes detailed allegations that Defendants' event contracts are indistinguishable from prohibited sportsbooks (ECF No. 1-1 at PageID ##: 24–33, ¶¶ 28–52) and references state-issued cease-and-desist letters to Defendants from Ohio, Arizona, Illinois, Maryland, Montana, Nevada, and New Jersey.  ECF No. 1-1 at PageID #: 34, ¶ 54.  The Complaint also references Defendant Kalshi's acknowledgement to the D.C. district court that some of its offerings were illegal.  ECF No. 1-1 at PageID ##: 35–36, ¶ 58.

This action is one of several civil actions Plaintiff brought against Defendants in state courts, including Georgia, South Carolina, Illinois, Massachusetts, and Kentucky.  ECF No. 30 at PageID #: 256–57.[1]  In each of these cases, Defendants removed to federal court.  Plaintiff has motions to remand pending in the Illinois and Massachusetts cases.  *See Mass. Gambling Recovery LLC v. Kalshi, Inc., et al.*, No. 1:25-cv-12705, ECF No. 25 (D. Mass. Oct. 22, 2025); *Ill. Gambling Recovery LLC v. Kalshi, Inc.*, No. 1:25-cv-11374, ECF No. 21 (N.D. Ill. Oct. 20, 2025).  Two district courts, Georgia and Kentucky, have ruled on Plaintiff's motion to remand with split results.  *See Ky. Gambling Recovery LLC v. Kalshi Inc., et al.*, No. 3:25-cv-00054-GFVT, 2026 WL 596107 (E.D. Ky. Mar. 5, 2026) (granting motion to remand); *Ga. Gambling Recovery LLC v. Kalshi Inc.*, No. 4:25-cv-310 (CDL), 2026 WL 279375 (M.D. Ga. Feb. 3, 2026) (denying motion to remand).  All parties have submitted supplemental analyses regarding these holdings.  Def. Notice of Supp. Auth., ECF No. 35; Plf. Response to Def. Supp. Auth., ECF No. 36; Plf. Notices of Supp. Auth., ECF No. 37 and ECF No. 38; Def. Robinhood Motion for Leave

---

[1] *Ga. Gambling Recovery LLC v. Kalshi Inc.*, No. SC2025CV001749 (Ga. St. Ct.); *Ill. Gambling Recovery LLC v. Kalshi Inc.*, No. 2025L007524 (Ill. Cir. Ct.); *Ky. Gambling Recovery LLC v. Kalshi Inc.*, No. 25-CI-00512 (Ky. Cir. Ct.); *Mass. Gambling Recovery LLC v. Kalshi Inc.*, No. 2584CV01630 (Mass. Super. Ct.); *S.C. Gambling Recovery LLC v. Kalshi Inc.*, No. 2025CP3700563 (S.C. Cir. Ct.).

(4:25CV1573)

to File *Instanter* Response to Plf. Notice of Supp. Auth., ECF No. 39; Def. Kalshi Motion for

Leave to File *Instanter* Response to Plf. Notice of Supp. Auth., ECF No. 40.  The latter motions

are granted.

## II.     DISCUSSION

A defendant may remove a civil action filed in state court under 28 U.S.C. § 1441, when

there is either diversity jurisdiction, pursuant to 28 U.S.C. § 1332, or the claims involve a federal

question, as defined in 28 U.S.C. § 1331.  *See Martin v. Franklin Capital Corp.*, 546 U.S. 132,

134 (2005); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("Federal

courts are courts of limited jurisdiction.  They possess only that power authorized by

Constitution and statute.").  Defendants assert that this Court has subject matter jurisdiction

based on both a federal question and under the Class Action Fairness Act ("CAFA"), 28 U.S.C. §

1332(d).  Kalshi additionally argues that Webull, SIG, and SGP are fraudulently joined and that

the Court may exercise diversity jurisdiction under § 1332.  Plaintiff moves to remand the case,

arguing that: (1) no federal question appears on the face of its well-pleaded complaint; (2) CAFA

is inapplicable; and (3) Kalshi cannot satisfy its heavy burden to show fraudulent joinder to

defeat diversity.  ECF No. 25 at PageID ##: 169–70.  Each argument is addressed in turn.

### A.  Federal Question

#### 1.  *The well-pleaded complaint rule*

"To determine whether [a] claim arises under federal law, we examine the 'well pleaded'

allegations of the complaint and ignore potential defenses[.]" *Mikulski v. Centerior Energy

Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1,

6 (2003)); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987).  "Under the well-pleaded

complaint rule, the plaintiff 'is master to decide what law he will rely upon.'"

4

(4:25CV1573)

*Med. Grp., PLLC*, 779 F.3d 352, 357 (6th Cir. 2015) (citing *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 515 (6th Cir. 2003)).  "[A] case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated . . . and even if both parties concede that the federal defense is the only question truly at issue."  *Roody v. Grand Trunk Western R.R. Inc.*, 395 F.3d 318, 322 (6th Cir. 2005) (quoting *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987)) (original emphasis); *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (same).

Plaintiff's single state-law claim is based on Ohio's Statute of Anne alleging that Defendants' operated illegal "event contracts" upon which Ohio residents could place bets on future outcomes of sports games, political elections, or the most popular song.  ECF No. 1-1 at PageID #: 17, ¶ 2.  Ohio law provides:

> (A) All promises, agreements, notes, bills, bonds, or other contracts, mortgages, or other securities, when the whole or part of the consideration thereof is for money or other valuable thing won or lost, laid, staked, or betted at or upon a game of any kind, or upon a horse race or cockfights, sport or pastime, or on a wager, or for the repayment of money lent or advanced at the time of a game, play, or wager, for the purpose of being laid, betted, staked, or wagered, are void.
>
> (B) Sections 3763.01 to 3763.08 of the Revised Code do not apply to bingo as defined in section 2915.01 of the Revised Code or to any game of chance that is not subject to criminal penalties under section 2915.02 of the Revised Code.

Ohio Rev. Code § 3763.01.  Section 2915.02 "does not prohibit conduct in connection with gambling expressly permitted by law."  Ohio Rev. Code § 2915.02(C).  Ohio law further provides:

> If a person . . . loses to another, money or other thing of value, and pays or delivers it or a part of it, to the winner thereof, such person losing and paying or deliberating, within six months after such loss and payment or delivery, may sue for and recover such money or

5

(4:25CV1573)

> thing of value or part thereof, from the winner thereof, with costs of suit.
>
> Neither this section . . . of the Revised Code shall apply to any business transacted upon a regularly established stock exchange or board of trade through a member thereof whose relation to the transaction is that of broker only, and who actually delivers or receives the securities or other commodity bought or sold in accordance with the rules and regulations of said stock exchange or board of trade.

Ohio Rev. Code § 3763.02. A plaintiff "need only allege that the defendant is indebted to the plaintiff for, or received to the plaintiff's use, the money so lost and paid, or converted the goods won of the plaintiff to the defendant's use, whereby the plaintiff's action accrued to him, without setting forth the special matter." Ohio Rev. Code § 3763.03. Finally, the statute permits a third-party plaintiff to recover gambling losses against an illegal gaming operator if the persons who lost in the illegal betting does not bring a claim within six months. Ohio Rev. Code § 3763.04; *see Salamon v. Taft Broadcasting Co.*, 16 Ohio App.3d 336, 336 (Ohio Ct. App. 1984).

The parties disagree on whether the legality of Defendants' event contracts is an element of or defense against Plaintiff's state-law claim. Plaintiff contends that it need only allege that: (1) a person, (2) lost money or thing of value, (3) by playing a game or wager, and (4) that person failed to bring an action within six months. ECF No. 25-1 at PageID #: 171 (citing Ohio Rev. Code § 3763.03). Plaintiff argues that the exceptions established in § 3763.01(B) (gambling permitted by law pursuant to § 2915.02(C)) and § 3763.02 (transactions upon a regularly established stock exchange or board of trade) are affirmative defenses not properly considered for determining whether a claim raises a federal question. ECF No. 25-1 at PageID ##: 171–72. Defendants retort that the event contracts at issue are legal under the Commodity Exchange Act ("CEA"), and that Kalshi's exchange on which the "event contracts" are bought and sold is regulated by the Commodity Futures Trading Commission ("CFTC"). ECF No. 30 at

6

(4:25CV1573)

PageID #: 253; ECF No. 31 at PageID ##: 281–82.  According to Defendants, Plaintiff's claim hinges on whether the event contracts were in fact illegal and, therefore, legality is integral to Plaintiff's well-pleaded complaint.  ECF No. 30 at PageID ##: 260, 264; ECF No. 31 at PageID #: 284.

As noted above, two district courts have already addressed the parties' arguments.  In *Georgia Gambling Recovery LLC*, the Middle District of Georgia rejected Plaintiff's affirmative defense argument, reasoning that it oversimplified and ignored the Georgia statute.  2026 WL 279375 at *2.  Relying on Georgia state-law precedent, in which the Georgia Supreme Court held a Georgia contract related to the Kentucky lottery was lawful and not void under the Georgia statute, *see id.* at *3 (citing *Talley v. Mathis*, 453 S.E.2d 704 (Ga. 1995)), the court concluded that the issue of whether federal law permitted the challenged event contracts was a necessarily element of the plaintiff's claim.  *Id*.  Conversely, in *Kentucky Gambling Recovery LLC*, the Eastern District of Kentucky held that, although the defendants' asserted "well-reasoned defenses" to liability under Kentucky law, such arguments were nonetheless defenses and the "case may not be removed to federal court solely on the basis of a federal defense." 2026 WL 596107, at *4.

This case is distinguishable from *Georgia Gambling Recovery* because no party cited, nor did the Court identify on its own, Ohio case law interpreting the legality of a gambling scheme as an essential element of a claim under Ohio's Statute of Anne.  Furthermore, the U.S. Supreme Court recently held that "exemptions set forth in a different part of the statute . . . do not impose additional pleading requirements[.]" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 701 (2025). The Court explained that "when a statute has 'exemptions laid out apart from the prohibitions,' and the exemptions 'expressly refe[r] to the prohibited conduct as such,' the exemptions

7

(4:25CV1573)

ordinarily constitute 'affirmative defense[s]' that are 'entirely the responsibility of the party raising' them." *Id*. (citing *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008)) (brackets in original).  In short, it is not Plaintiff's burden to prove in the Complaint that the statutory exemptions in § 3763.02[2] and § 2915.02(C) do not apply in this case.  Rather, the burden is on Defendants to demonstrate, as an affirmative defense, that they do apply.

Assuming, *arguendo*, that illegality is an element of Plaintiff's state-law claim, the Complaint alleges sufficient facts to satisfy that element.  Plaintiff alleges that Defendants are operating "prediction markets" dependent on "market makers," permitting Ohioans to "place illegal, unregulated gambles 'against the house.'"  ECF No. 1-1 at PageID ##: 23–24, ¶¶ 28–29. The Complaint explains that Kalshi acts as "the house" and "bears the credit risk."  ECF No. 1-1 at PageID ##: 26–27, ¶ 35.  Like traditional bookmakers, Kalshi purportedly "equaliz[es]" such risks by adjusting betting lines to minimize its own losses regardless of the outcome of a particular bet.  ECF No. 1-1 at PageID ##: 26–27, ¶¶ 35–36.  The Complaint alleges that SIG and SGP also act as "market makers," serving as counterparties to each wager placed on Kalshi's platform by Ohio gamblers.  ECF No. 1-1 at PageID ##: 20, 23–24, ¶¶ 14–15, 28; ECF No. 25-1 at PageID #: 184. Plaintiff claims Ohio has long prohibited such gambling schemes.  ECF No. 1-1 at PageID##: 33–35, ¶ 53.  Robinhood and Webull each offer "event contracts" using Kalshi's platforms and, acting in concert with Kalshi, both benefit from Kalshi's illegal gambling scheme. ECF No. 1-1 at PageID ##: 28, 36–37, ¶¶ 38–39, 61–62.  Plaintiff also references a cease-and-desist letter sent by the Ohio Casino Control Commission to Kalshi and Robinhood on March 31,

---

[2] Notably, § 3763.02 is titled "Money lost at games may be recovered – *exceptions*." Ohio Rev. Code § 3763.02 (emphasis added).

8

(4:25CV1573)

2025, in which the State warned that Defendants' operations were "no different than placing a bet through a traditional sportsbook." ECF No. 1-1 at PageID #: 34, ⁋ 54.

Based on these allegations, the Complaint sufficiently pleads that Defendants engaged in unlawful gambling under Ohio law.  The burden shifts to Defendants to demonstrate that such transactions are indeed permitted by Ohio law.  That Defendants anticipate that such defenses are based in federal law does not equate to the Complaint raising a federal question.  Rather, "the determination of jurisdiction is based only on the allegations in the plaintiff's 'well-pleaded complaint'—not on any issue the defendant may raise." *See Royal Canin*, 604 U.S. at 26. Therefore, Plaintiff's well-pleaded complaint does not raise a federal question.

> 2. *Exceptions to the well-pleaded complaint rule.*

There are exceptions to the well-pleaded complaint rule including: (1) the artful pleading doctrine (prohibiting a plaintiff from "artfully" casting a federal law claim as a state-law claim); (2) the complete preemption doctrine (permitting removal when a federal statute wholly displaces the state-law cause of action); and (3) the substantial federal question doctrine (permitting removal when vindicating a right under state law necessarily turns on some construction of federal law).  *Mikulski*, 501 F.3d at 560 (internal citations omitted).  Defendants allege the substantial federal question doctrine applies (ECF No. 30 at PageID ##: 266–69; ECF No. 31 at PageID ##: 289–90); Kalshi also alleges the complete preemption doctrine applies (ECF No. 31 at PageID ##: 287–88).  Both arguments are unpersuasive.

> a. Complete preemption doctrine

Kalshi argues that its event contracts are subject to the CEA's "exclusive jurisdiction" because they are "swaps" executed on a CFTC-regulated designated contract market ("DCM").

(4:25CV1573)

ECF No. 31 at PageID ##: 286–88.  Recently, three courts within the Sixth Circuit have addressed Kalshi's preemption argument with mixed results.

In *KalshiEX LLC v. Orgel*, the Middle District of Tennessee granted Kalshi's motion for a preliminary injunction against enforcement of the Tennessee Sports Gaming Act, concluding that compliance with Tennessee law would require Kalshi to create a Tennessee-only exchange in violation of the CEA's impartiality requirement.  No. 3:26-cv-00034, 2026 WL 474869, at *9–10 (M.D. Tenn. Feb. 19, 2026).  The court explained that "preemption is appropriate '[w]hen application of state law would directly affect trading on or the operation of a futures market.'"  *Id*. at *10 (citing *Effex Cap., LLC v. Nat'l Futures Ass'n*, 933 F.3d 882, 894 (7th Cir. 2019)).  As such, the court held that compliance with Tennessee law "would directly affect trading on Kalshi by limiting who can trade with whom."  *Id*.

The Southern District of Ohio reached the opposite conclusion, holding that the CEA did not preempt Ohio's sports-gambling laws.  *KalshiEX LLC v. Schuler*, No. 2:25-cv-1165, 2026 WL 657004, at *4 (S.D. Ohio Mar. 9, 2026).  First, the court rejected Kalshi's efforts to define event contracts as "swaps" governed by the CEA and within the CFTC's exclusive jurisdiction.  *Id*. at *6.  The court explained that the term "swap," in the context of the CEA, "involve[s] financial instruments and measures that traditionally and directly affect commodity prices" such as "[c]urrency exchange rates, the weather, and energy costs," not bets on "the number of points scored in the Huskies-Bobcats game[.]"  *Id*.  The court further explained that if event contracts were "swaps," as Kalshi argued, then all sportsbooks "would be forced onto DCMs like Kalshi" leading to an absurd result.  *Id*.  Second, the court concluded that enacting gambling laws is "clearly a proper exercise of the state's police power" and, "[i]t would thus be 'inappropriate' to

10

(4:25CV1573)

treat the CEA as preempting Ohio's sports gambling laws without first finding that Congress had

the 'clear and manifest purpose' to do so." *Id*. at \*8 (citations omitted).

The Eastern District of Kentucky also rejected Kalshi's preemption argument, noting that

the Supreme Court has only found complete preemption under three statutory schemes: (1)

Section 301 of the Labor Management Relations Act of 1947; (2) the Employee Retirement

Income Security Act of 1975; and (3) the National Bank Act. *Ky. Gambling Recovery LLC,*

*2026 WL 596107 at \*3* (citing *Mikulski*, 501 F.3d at 563–64).  Because the CEA is not included

in that limited rule, the court concluded that statute does not completely preempt state law. *Id*.

Upon review, the Court's reasoning best aligns with the analyses of its Ohio and

Kentucky colleagues.  The U.S. Supreme Court has not recognized the CEA as completely

preempting state law, nor does the Court adopt Kalshi's broad definition of "swaps" to include

event contracts for sports-game betting.  Nothing in the CEA demonstrates Congress' intent to

preempt state gambling laws.  Kalshi's preemption argument fails.

b.  Substantial federal question doctrine

Defendants also assert that the substantial federal question doctrine applies, permitting

the Court to exercise federal-question jurisdiction. *Est. of Cornell v. Bayview Loan Servicing,*

*LLC*, 908 F.3d 1008, 1014 (6th Cir. 2018) (citing *Grable & Sons Metal Prod., Inc. v. Darue*

*Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)).  The substantial federal question doctrine provides

that even when state law creates a cause of action, it might still "arise under" federal law "if a

well-pleaded complaint establishe[s] that its right to relief under state law requires resolution of a

substantial question of federal law." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers*

*Vacation Trust*, 463 U.S. 1, 13 (1983).  The exception applies to a "slim category" of cases and

is interpreted narrowly. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006)

11

(4:25CV1573)

syllabus, para (d). The "mere presence of a federal issue in a state cause of action does not automatically confer federal jurisdiction." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813 (1986).

To determine whether the doctrine applies, the Sixth Circuit prescribes a three-prong test, drawn directly from *Grable*, to evaluate whether:

(1) "a state-law claim necessarily raise[s] a stated federal issue,"

(2) that is "actually disputed and substantial,"

(3) "which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."

*Est. of Cornell*, 908 F.3d at 1015 (citing *Grable*, 545 U.S. at 314); *see United States v. City of Loveland, Ohio*, 621 F.3d 465, 472 (6th Cir. 2010).

The parties disagree on whether the Complaint raises a disputed federal issue. Plaintiff alleges that Defendants' event contracts contravene Ohio's gambling laws (ECF No. 1-1 at PageID #: 33, ¶ 53) while Defendants insist the event contracts are permitted under federal law. ECF No. 30 at PageID #: 253; ECF No. 31 at PageID ##: 281–82. As discussed above, Defendants' claims are best construed as defenses and even if the parties argue over the applicability of the CEA to Ohio's Statute of Anne, that does not necessarily raise a federal issue. *See Ky. Gambling Recovery LLC*, 2026 WL 596107, at *5; *Merrell Dow Pharms. Inc.*, 478 U.S. at 813 (The "mere presence of a federal issue in a state cause of action does not automatically confer federal jurisdiction.").

The second prong of the *Grable* analysis considers four "substantiality" sub-factors to determine whether:

(1) the case includes a federal agency, and particularly, whether the agency's compliance with the federal statute is in dispute;

(4:25CV1573)

> (2) the federal question is important (*i.e.*, not trivial);
>
> (3) a decision on the federal question will resolve the case (*i.e.* the federal question is not merely incidental to the outcome); and
>
> (4) a decision on the federal question will control many other cases (*i.e.* the issue is not anomalous or isolated).

*Est. of Cornell*, 908 F.3d at 1015 (quoting *Mikulski, 501 F.3d at 570*).

The first sub-factor "is both objective and apparent" (*i.e.*, the case either does or does not include a federal agency). *Mikulski, 501 F.3d at 570* (citing *Empire, 547 U.S. at 700*).  The CFTC is not a party to this action, nor are there any allegations relating to that agency's efforts to enforce the CEA regarding the event contracts at issue.  The first factor weighs in Plaintiff's favor.

The second sub-factor focuses on "the importance of the issue to the federal system as a whole," *Gunn v. Minton, 568 U.S. 251, 260 (2013)*, and is "far more subjective[.]" *Mikulski, 501 F.3d at 570*.  It requires a court to decide "whether the question to be resolved is important[,]" *id.* at 571 (citing *Empire , 547 U.S. at 700*), or whether it "implicate[s] any broader or more substantial issue." *Id*.  A court must decide whether "it [is] *more likely than not* that this particular question is . . . important to the federal government." *Id*. (emphasis added).

Against this backdrop, the Court finds that discernment of Plaintiff's state-law claim does not "'require the analysis and interpretation of federal law' but rather [the analysis and interpretation of] the federal law's impact on [Ohio] state law." *See Ky. Gambling Recovery LLC*, 2026 WL 596107, at *6 (citing *Mikulski, 501 F.3d at 571*).  Specifically, Defendants argue that the exception under Ohio Rev. Code § 2915.02(C) applies because the event contracts at issue are permitted under federal law.  ECF No. 30 at PageID #: 253; ECF No. 31 at PageID ##: 281–82.  Any analysis regarding the legality of the event contracts under the CEA relates to the

13

(4:25CV1573)

applicability of an exemption under Ohio law, not federal law.  *See* Ohio Rev. Code § 3763.01(B); Ohio Rev. Code § 2915.02(C).  Similarly, although Defendants anticipate arguing that Kalshi operates a CFTC-regulated "stock exchange or board of trade," any such analysis relates to whether Ohio law—not federal law—exemptions apply.  *See* Ohio Rev. Code § 3763.02.  Accordingly, the Court is satisfied that whether Ohio law exemptions apply to Defendants' operations, is of little importance to the federal government.  The second sub-factor, therefore, weighs in Plaintiff's favor.

The third sub-factor is objective: "whether resolution of th[e] question is dispositive of th[e] case" (*i.e.*, does resolving this issue mean one party "cannot prevail.").  *Mikulski*, 501 F.3d at 571.  As Plaintiff points out, the federal law issue relates only to Defendants' affirmative defenses against the Complaint.  ECF No. 25-1 at PageID #: 175.  While Defendants may lodge a Rule 12(b) motion asserting defenses based on federal law, if Plaintiff survives such a motion, federal law will have little impact on the analysis of Plaintiff's Ohio law-based claim.  Therefore, the third sub-factor weighs in Plaintiff's favor.

The fourth sub-factor is subjective and turns on whether "a decision on this particular and very narrow question will . . . be controlling over numerous other cases."  *Mikulski*, 501 F.3d at 571 (citing *Empire*, 547 U.S. at 700).  A case is likely non-precedential if it is "fact-bound and situation-specific" as opposed to a "nearly pure issue of law, the resolution of which would establish a rule applicable to numerous [other] cases."  *Empire*, 547 U.S. at 681 syllabus para (d).  Plaintiff claims that this case is fact-dependent, and the outcome of other cases brought under Ohio's Statute of Anne will depend on the specific facts at issue.  ECF No. 25-1 at PageID #: 176.  Plaintiff's argument is well-taken.  Analysis in this case regarding the impact of federal law on the Ohio's Statute of Anne will be limited to parties bringing similar claims under similar

14

(4:25CV1573)

circumstances. *See Ky. Gambling Recovery*, 2026 WL 596107, at *7 (holding that resolution "only impacts parties bringing a challenge with a nearly identical factual predicate as this case"); *Mikulski*, 501 F.3d at 571–72 ("While §312(n)(1) may *affect* a shareholder's tax obligations, it will only do so under particular circumstances."). Accordingly, the *Grable* substantiality (fourth) sub-factor weighs in Plaintiff's favor.

The third and final *Grable* prong requires the Court to balance federal and state interests. *Mikulski*, 501 F.3d at 573 (citing *Grable*, 545 U.S. at 315). As discussed at length above, Plaintiff alleges Defendants violated Ohio law. That federal law-based defenses may be available to Defendants does not outweigh the state of Ohio's interests in enforcing its own gambling statutes. The third prong weighs in favor of Plaintiff.

Tallying the above, the substantial federal question doctrine does not apply in this case and the Court lacks federal-question jurisdiction under § 1331.

### B. Application of CAFA

Defendants also argue that the Court has diversity jurisdiction under CAFA's relaxed diversity requirements. *Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 834 (6th Cir. 2020). Under CAFA, a district court may exercise diversity jurisdiction when: (1) a case has minimal diversity of citizenship; (2) the proposed class has at least 100 putative members; and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d); *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014). Defendants' argument fails on the second prong. Ohio Gambling Recovery, LLC is the one and only plaintiff in this case. ECF No. 1-1. Even if, as Defendants argue, each "gambling loss" constitutes a separate cause of action (ECF No. 30 at PageID #: 271; ECF No. 31 at PageID #: 296), that does not necessarily mean there must be separate plaintiffs. Ohio law permits Plaintiff to recover

15

(4:25CV1573)

losses as a third party on its own behalf, not on behalf of any other person.  Ohio Rev. Code §

3763.04; *Marx v. Scott*, 56 Ohio App. 366, 366 (Ohio App. Ct. 1937) syllabus ("Any person, *for*

*his own benefit*, may sue and recover it from the winner only.") (cleaned up; emphasis added).

All Plaintiff must prove is that "a person" lost money or a thing of value, as provided in the Ohio

statute, to another.  *Salamon*, 16 Ohio App. 3d at 366, syllabus; *see Salamon v. Cedar Point,*

*Inc.*, CA No. E-84-52, 1985 WL 7541 (Ohio App. Ct. July 19, 1985) (prohibiting recovery under

§ 3763.04 when third party plaintiff could not "prove that specific persons lost specific sums of

money to specific winners during the relevant period.").  There is no requirement that the

individual gamblers be included as parties in the litigation and Plaintiff has pled this case

alleging only one party—itself.

Because there is no proposed class or even multiple plaintiffs, the relaxed diversity

requirements under CAFA are inapplicable.

**C.  Fraudulent Joinder**

Section 1332 grants federal courts subject matter jurisdiction over cases between citizens

of different states when the amount in controversy exceeds $75,000.00.  Diversity jurisdiction

requires that "no plaintiff and no defendant can be the citizen of the same state."  *Tennial v. Bank*

*of Am.*, No. 17-6377, 2020 WL 2530872, at *1 (6th Cir. Apr. 15, 2020); *U.S. Framing Int'l LLC*

*v. Continental Bldg. Co.*, 134 F.4th 423, 428 (6th Cir. 2025) ("A federal court may not exercise

diversity jurisdiction unless the parties are completely diverse.").  For diversity jurisdiction, a

corporation can be a citizen of two states: (1) its state of incorporation; and (2) where it has its

principal place of business.  28 U.S.C. § 1332(c); *see Roberts v. Mars Petcare US, Inc.*, 874 F.3d

953, 956 (6th Cir. 2017) ("So it is that a federal court has no jurisdiction to hear a case between a

16

(4:25CV1573)

citizen of a State and corporation headquartered in the same State . . . even if the corporation is incorporated elsewhere.").

The parties do not dispute that Plaintiff is diverse from Robinhood and Kalshi.[3]  Kalshi argues that Webull, SIG, and SGP—all citizens of Florida—were fraudulently joined because Plaintiff has no colorable state-law claim against them.  ECF No. 31 at PageID ##: 290–91; *see Jerome–Duncan, Inc. v. Auto–By–Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (noting a defendant may avoid remand by demonstrating non-diverse parties are fraudulently joined.).  Fraudulent joinder occurs "when the non-removing party joins a party against whom there is no colorable cause of action." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011).  The removing party bears the burden of clearly establishing that the plaintiff cannot recover "under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citation omitted); *see also Walker*, 443 F. App'x at 954–55.

When ruling on a motion to remand involving fraudulent joinder allegations, the Court must evaluate all factual allegations in the light most favorable to the plaintiff, including "summary-judgment-type evidence" such as affidavits. *Walker*, 443 F. App'x at 954.  The analysis is "similar to, but more lenient than, [one] applicable to a Rule 12(b)(6) motion to

---

[3] The citizenship of a limited liability company, a limited liability partnership, or a limited liability limited partnership (*i.e.*, Plaintiff, KalshiEX LLC, Kalshi Klear LLC, Kalshi Trading LLC, SIG, SPG, Robinhood Derivatives LLC) is determined by the citizenship of each of its members. *Akno 1010 Market Street St. Louis Miss. LLC v. Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022).  Defendants claim, and Plaintiff does not dispute, that Plaintiff's only member is a Florida resident. *Ohio Gambling Recovery LLC*, No. 4:25-cv-1574, ECF No. 1 at PageID #: 9–10, ¶¶ 28–29; ECF No. 25.

17

(4:25CV1573)

dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432–33 (6th Cir. 2012) (citing *Walker, 443 F. App'x. at 952–54*).

Kalshi claims that Plaintiff cannot recovery from SIG and SGP because those two entities are not "winners" as required under § 3763.02.  ECF No. 31 at PageID ##: 294–95.  This argument has some merit.  The statute permits a person to recover money or things of value lost in a game or wager from "the winner thereof."  Ohio Rev. Code § 3763.02.  This implies that the "winner thereof" must have participated in the game or wager in some fashion.  *See Humphrey v. Viacom, Inc.*, No. 06-2768 (DMC), 2007 WL 1797648, at *10 (D.N.J. June 20, 2007).  Therefore, the question is: what does it mean to "participate in" a game or wager?

According to Kalshi, Plaintiff's claims relate to indirect profits allegedly received by SIG and SGP from the alleged gambling and kickbacks from Kalshi, which is insufficient to establish either entity as a "winner" under Ohio law.  ECF No. 31 at PageID #: 295.  In support of its argument that Plaintiff cannot recover "indirect profits," Kalshi cites to *Burrow v. Hussong*, in which a plaintiff brought a claim under Ohio's Statute of Anne to recover gambling losses assigned to a third party.  21 Ohio C.D. 211, 212–13 (Ohio Cir. Ct. 1906).  In *Burrow*, the court held that the plaintiff "could maintain [a claim] against the assignors . . . but [not] against the assets in the hands of the assignee[.]"  *Id*. at 214.

Plaintiff retorts that SIG and SGP are not assignees but participants because they served as "market makers" working in concert with Kalshi as "counterparties to each wager" placed by Ohio residents, making them winners under Ohio law.  ECF No. 25-1 at PageID #: 184; ECF No. 33 at PageID #: 322; ECF No. 1-1 at PageID ##: 20, 23–24, 33, ¶¶ 14–15, 28, 52.  Plaintiff relies on *Commonwealth ex rel. Brown v. Stars Interactive Holdings (IOM) Ltd.*, in which the Kentucky Supreme Court held that an online poker site constituted a "winner" because it acted as

(4:25CV1573)

the house and took a percentage from all wagers.  617 S.W.3d 792, 806–07 (Ky. 2020).

Although non-binding, *Commonwealth* is persuasive, particularly because the Ohio Supreme

Court has not addressed this issue.

Therefore, construing the factual allegations and evidence in the light most favorable to

Plaintiff, the Complaint pleads a colorable state-law cause of action against SIG and SGP for

their respective roles as "market makers."  *See Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493

(6th Cir. 1999) ("All doubts as to the propriety of removal are resolved in favor of remand.").

Because SIG and SGP were joined properly, the Court need not address whether Webull Corp.

was fraudulently joined, as all SIG and SGP are citizens of Florida just as is Plaintiff.

### D.  Attorneys' Fees and Costs

Plaintiff requests attorneys' fees and costs because Defendants' grounds for removal

were "objectively unreasonable."  ECF No. 25-1 at PageID #: 186.  The Court disagrees.

The Supreme Court instructs district courts to grant attorneys' fees and costs "only

whe[n] the removing party lacked an objectively reasonable basis for seeking removal."  *Martin

v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005); *see Warthman v. Genoa Twp. Bd. of Trus.*,

549 F.3d 1055, 1059–60 (6th Cir. 2008).  Defendants' arguments regarding exceptions to the

well-pleaded complaint rule were unsuccessful and legitimate.  *See Paul v. Kaiser Foundation

Health Plan of Ohio*, 701 F.3d 514, 523 (6th Cir. 2012) (holding that because the question of

complete preemption was close, it could not be said that the removing party lacked an

objectively reasonable basis for removal).  Similarly, Kalshi's fraudulent joinder claims were not

unreasonable given the limited jurisprudence Ohio provides concerning whom constitutes a

"winner" under the statute at issue.  The arguments were close and, therefore, Defendants'

19

(4:25CV1573)

grounds for removal were not "objectively unreasonable" to make imposing attorneys' fees and costs under 28 U.S.C. 1447(c) appropriate.

### III.    CONCLUSION

For the reasons stated herein, Plaintiff's Motions to Remand (ECF No. 25; ECF No. 29) are granted.  The Court remands the removed case to the Mahoning County Court of Common Pleas.[4]  Separate Remand Order shall issue.


IT IS SO ORDERED.


March 30, 2026                                            /s/ Benita Y. Pearson
Date                                                       Benita Y. Pearson
                                                          United States District Judge

---

[4] As previously noted, Defendants' separate notices of removal generated two cases on this Court's docket.  For efficiency and without assuming jurisdiction, those two cases were consolidated.  See ECF No. 11.  Because, however, only one case was removed, albeit twice, the Court remands one case to the place from which it originated, the Mahoning County Court of Common Pleas.

20